UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

CLARENDON AMERICA INSURANCE COMPANY,

        Plaintiff,

v.

NEVADA YELLOW CAB CORPORATION, JOSEPH JAMES CARLSON, and PATRICIA L. PARKER,

        Defendants.

_____

NEVADA YELLOW CAB CORPORATION and JOSEPH JAMES CARLSON,

        Counterclaimants,

v.

CLARENDON AMERICA INSURANCE COMPANY,

        Counter-Defendant.

2:11-CV-00684-LRH-GWF

ORDER

Before the court is Plaintiff/Counter-Defendant Clarendon America Insurance Company's ("Clarendon") Motion to Dismiss Counterclaims (#26[1]). Defendants/Counterclaimants Nevada

---

[1] Refers to the court's docket entry number.

Yellow Cab Corporation ("Yellow Cab") and Joseph James Carlson ("Carlson") filed an opposition (#32), and Clarendon replied (#33).

## I. Facts and Procedural History

This diversity action between an insurer and its insured arises out of a car accident on October 1, 2006, between a taxi cab owned by Yellow Cab and driven by Carlson and a second car in which Patricia Parker ("Parker") was a passenger.[2] On September 18, 2008, Parker filed suit in Nevada state court, alleging that Yellow Cab and Carlson are responsible for injuries Parker sustained in the accident. Yellow Cab's auto insurance policy with Clarendon requires Yellow Cab to provide for its own defense in the state court action, the expenses of which erode Yellow Cab's $1 million self-insured retention, known as the "Retained Amount." The policy further provides that Clarendon has "the right and opportunity, but neither the duty nor obligation, to associate with the Insured in the defense and control of any claim or Suit seeking damages in excess of the Retained Amount." Accordingly, Yellow Cab retained counsel for itself and Carlson and has been paying all fees and costs associated with the state court action, which is ongoing.

Yellow Cab and Carlson did not notify Clarendon of the state court action until April 14, 2011. Along with the notice, they provided a detailed status report prepared by their defense counsel, dated March 14, 2011. The status report noted that defense counsel had been authorized to propose a binding arbitration agreement to Parker's counsel, that negotiations regarding the high-low damages limits for arbitration were ongoing, and that defense counsel had proposed a high-low range of $0 to $2 million, which would exceed the retained limit under the Clarendon policy.

On April 16, 2011, Clarendon's representative, Wayne Felix, responded to the notice and requested a copy of Parker's complaint and certain information about Parker, the driver and their insurance coverage and assets. However, Felix did not seek any information about Parker's injuries

---

[2]By stipulation, Parker was dismissed as a defendant in this action on July 21, 2011.

2

and said nothing about the arbitration proposal.  Clarendon retained its own counsel, which contacted Yellow Cab's defense counsel on April 18, 2011, and reviewed Yellow Cab's files on April 21, 2011.  Counterclaimants allege that Clarendon's intent in retaining counsel was to manufacture and fabricate a reason for denying coverage for Parker's claims.

On April 22, 2011, Yellow Cab's defense counsel provided a written report to Clarendon and its counsel about the state court action and defense counsel's strategy.  The report noted, *inter alia*, that negotiations with Parker's counsel over a binding arbitration agreement had been ongoing for the past six weeks or so, that they had agreed on a high-low range of $0 to $3.5 million, and that defense counsel had sent Parker's counsel a written agreement, which had not yet been finalized.  Defense counsel also asked Clarendon's representative, Wayne Felix, for his "direction regarding the arbitration cap" at his "earliest convenience."  Clarendon and its counsel did not respond to defense counsel's request, and the arbitration agreement was finalized on April 28, 2011.  Counterclaimants allege that Clarendon purposefully remained silent as part of a scheme to avoid its coverage obligations by inducing Yellow Cab to believe that Clarendon agreed with the decision to agree to high-low binding arbitration.

On April 29, 2011, Clarendon filed this diversity action for declaratory relief.  Clarendon essentially claims that under the policy Yellow Cab and Carlson had a duty to immediately notify Clarendon of the state court action and to consult with Clarendon before authorizing defense counsel to negotiate a high-low binding arbitration that could potentially trigger coverage under the Clarendon policy, that they breached these duties, and that as a result no coverage exists for Parker's claims.

On July 14, 2011, Yellow Cab and Carlson filed counterclaims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) fraud, (4) misrepresentation, and (5) breach of Nevada's Unfair Claims Practices Act, NRS 686A.310.  Counterclaimants allege that Clarendon's declaratory relief action is in furtherance of its scheme to avoid its coverage

3

1  obligations and is based on false allegations that Clarendon has been prejudiced by being deprived
2  of its ability to participate in the defense of the state court action and by the high-low arbitration
3  agreement.  Clarendon now moves to dismiss the counterclaims.

4  **II.    Legal Standard**

5         To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil
6  Procedure 12(b)(6), a complaint must satisfy the notice pleading standard of Rule 8(a)(2).  *See*
7  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008).  A complaint must
8  contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.
9  R. Civ. P. 8(a)(2).  The Rule 8(a)(2) pleading standard does not require detailed factual allegations;
10 however, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the
11 elements of a cause of action" will not suffice.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)
12 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

13        Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter,
14 accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 1949 (internal
15 quotation marks omitted).  A claim has facial plausibility when the pleaded factual content allows
16 the court to draw the reasonable inference, based on the court's judicial experience and common
17 sense, that the defendant is liable for the misconduct alleged.  *See id.* at 1949-50.  "The plausibility
18 standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a
19 defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a
20 defendant's liability, it stops short of the line between possibility and plausibility of entitlement to
21 relief."  *Id.* at 1949 (internal quotation marks and citation omitted).

22        In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as
23 true.  *Id.* (citation omitted).  However, "bare assertions . . . amount[ing] to nothing more than a
24 formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth."
25 *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1951)
26

(alteration in original) (internal quotation marks omitted).  The court discounts these allegations because they do "nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951.)  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949).

**III.   Discussion**

   **A. Breach of Contract**

Yellow Cab and Carlson first claim that Clarendon breached its duties under the policy "to cooperate" with them in determining whether coverage is available under the policy and "to assist" them in avoiding taking any actions that Clarendon believes will interfere with coverage.  They contend that such duties required, *inter alia*, that Clarendon take a position regarding whether or not to set aside the arbitration agreement, and that Clarendon has breached that duty by refusing to cooperate, stating that it "will not instruct Yellow Cab as to how to conduct the defense including whether or not to undo the binding arbitration agreement."

In moving to dismiss this claim, Clarendon argues that Section I(B)(3) of the policy grants only a right, and imposes no duty, to defend, and its requirement that the insured and insurer "shall cooperate fully" in the defense applies only if Clarendon exercises its right.  Accordingly, because Clarendon has not done so, it argues it has no duty to cooperate in the defense.

In response, Yellow Cab and Carlson deny that their breach of contract claim is premised on a duty to defend.  Instead, they assert the claim is based on Clarendon's duty to cooperate regarding coverage, irrespective of any duty to defend.  Further, in response to Clarendon's argument that they have failed to cite any policy provisions imposing such a duty, Yellow Cab and Carlson argue that their factual allegations, coupled with Clarendon's submission of the entire policy, are sufficient to survive a motion to dismiss, such that they "are not required to parse [the policy's]

particular provisions in order to support their cause of action for breach of contract."

"A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Accordingly, in ruling on a motion to dismiss, a court may consider not only the allegations contained in the pleadings but also "exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Moreover, in order to prevent plaintiffs from avoiding dismissal "by deliberately omitting references to documents upon which their claims are based," the court may also consider documents not physically attached to the complaint if (1) the documents' authenticity is not contested, and (2) either the allegations of the complaint "explicitly incorporate[]" the documents' contents, or the complaint "necessarily relies" on the documents, in that they are "crucial" or "essential" to the plaintiff's claims. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998) (citing *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)).

Here, it is undisputed that the court may properly consider the Clarendon policy as a document on which Yellow Cab and Carlson's counterclaims necessarily rely. Accordingly, the court may consider the policy's provisions as if they were expressly alleged in the counterclaims, and Counterclaimants may not avoid dismissal by resting on allegations about the contents of those provisions that are inconsistent with or unsupported by the provisions themselves. Nor may Counterclaimants survive Clarendon's challenge to the contractual basis for their breach of contract counterclaim by refusing to specify the contract provisions upon which their claim and supporting allegations are based. In the absence of any indication that the duties allegedly breached are actually imposed by the policy's provisions, the court must conclude that there are no such provisions, that Counterclaimants' factual allegations are inconsistent with or unsupported by the terms of the policy, and therefore Counterclaimants have failed to state a claim for breach of contract upon which relief may be granted. The motion to dismiss shall therefore be granted on this claim; however, the dismissal shall be without prejudice and with leave to amend.

**B.  Breach of the Implied Covenant of Good Faith and Fair Dealing**

Apart from the express terms of the contract, Yellow Cab and Carlson next claim that Clarendon breached the implied covenant of good faith and fair dealing by unfairly interfering with, abridging, ignoring or inhibiting their rights to obtain insurance coverage under the policy. Specifically, they allege Clarendon breached the implied covenant (1) by filing the instant action for declaratory relief with the sole purpose of intimidating and coercing Yellow Cab and Carlson to abandon their coverage rights, (2) by intentionally inducing them to enter into the arbitration agreement in the state court action, while intending to use that agreement to avoid providing insurance coverage, and (3) by manufacturing frivolous and unjustified arguments of prejudice in an attempt to disclaim insurance coverage and to protect only its own interests, in disregard of its insureds' rights and interests.

In its motion to dismiss, Clarendon first argues that an essential element of a bad faith claim is the insurer's denial of or refusal to pay benefits due, which cannot be satisfied here because Clarendon has no present duty to defend or indemnify Yellow Cab or Carlson because the costs of defense have not yet exceeded the $1 million self-insured retention. The court disagrees. As Counterclaimants point out, this court has squarely rejected the assertion that "a claim for breach of the implied covenant of good faith and fair dealing fails in the absence of insurance coverage." *Turk v. TIG Ins. Co.*, 616 F. Supp. 2d 1044, 1054 (D. Nev. 2009). "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr., Inc. v. Washoe County*, 784 P.2d 9, 9 (1989) (quoting Restatement (Second) of Contracts § 205). Accordingly, "even if [the insurer] did not breach the express terms of the insurance contract, it may very well have breached the spirit of the contract" by intentionally taking actions to undermine its insured's rights and interests and to avoid its obligations. *Turk*, 616 F. Supp. 2d at 1054. Furthermore, Counterclaimants' cause of action for breach of the implied covenant may also sound in tort, as Clarendon "owed a special duty of loyalty to its insured that it may have violated"

7

by undertaking such actions. *Id.*

Clarendon next argues that its filing of this declaratory relief action regarding coverage cannot support a violation of the implied covenant, as Clarendon is merely seeking the court's guidance to promptly resolve any uncertainty regarding its coverage obligations. Clarendon is of course correct that declaratory relief actions are specifically allowed by federal and state law, *see* 28 U.S.C. § 2201, NRS § 30.030, and that such actions are generally a useful court process to facilitate the prompt resolution of legal disputes. Nonetheless, a declaratory relief action does not provide immunity for conduct that is otherwise in breach of the implied covenant of good faith and fair dealing. A contracting party bound by the implied covenant of good faith and fair dealing may no more use the legal system in a manner contrary to its duties of good faith and fair dealing than it may engage in such conduct outside the courts. For instance, just as an insurer may violate the implied covenant by denying coverage without a reasonable basis, so may that insurer violate the implied covenant by seeking a court's declaration of no coverage where no reasonable basis for the denial exists. The court therefore rejects Clarendon's argument that, as a matter of law, the filing of a declaratory relief action can never support a claim for breach of the implied covenant of good faith and fair dealing. As Clarendon asserts no other bases for dismissal of the breach of contract counterclaim, the motion shall be denied without prejudice.

**C. Fraud and Misrepresentation**[3]

Under Nevada law, "fraud must be proven by clear and convincing evidence as to each of the following elements: (1) a false representation made by the defendant; (2) defendant's knowledge or belief that the representation is false (or insufficient basis for making the

---

[3]The counterclaims for fraud and misrepresentation are pled as two separate causes of action. It is unclear to the court, however, whether these are truly separate claims, or whether they are one and the same claim for fraud. As both parties consolidate their discussion of the claims and address Counterclaimant's fraud allegations, the court will treat the claims accordingly for purposes of the present motion.

representation); (3) defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damage to the plaintiff resulting from such reliance." *Albert H. Wohlers & Co. v. Bartgis*, 969 P.2d 949, 957-58 (Nev. 1998). "With respect to the misrepresentation element, the suppression or omission of a material fact which a party is bound in good faith to disclose is equivalent to a false representation, since it constitutes an indirect representation that such fact does not exist." *Nelson v. Heer*, 163 P.3d 420, 426 (Nev. 2007) (internal quotation marks and citation omitted); *see also Mackintosh v. Jack Matthews and Co.*, 855 P.2d 549, 553 (Nev. 1993) (nondisclosure may amount to fraudulent concealment where the parties' special relationship imposes a duty to speak). Accordingly, Counterclaimants essentially allege that, following their request for guidance regarding the high-low arbitration agreement they were negotiating in the state court action, Clarendon willfully remained silent with the intent that Counterclaimants would rely on such silence as tacit approval of the arbitration agreement and would finalize it, all while Clarendon intended to then use the execution of the agreement as a basis to deny insurance coverage under the policy.

In its motion to dismiss, Clarendon does not dispute the above authorities or their application to the facts presented. Instead, Clarendon contends that Counterclaimants' fraud allegations are "manufactured" and counterfactual. Specifically, Clarendon argues that it could not have induced Counterclaimants to execute the arbitration agreement because, in fact, Yellow Cab had authorized its counsel to negotiate the arbitration agreement more than six weeks before Clarendon was even given notice of the state court action and the negotiations. Clarendon also argues that it could not have had "a 'duty' to disclose that Yellow Cab's negotiation of a binding arbitration agreement would destroy coverage under Clarendon's policy six weeks before Clarendon had any knowledge of the underlying action."

The court finds that Clarendon's arguments miss the mark. While Clarendon is correct that

1  it could not have had a duty of disclosure regarding its intent to use the arbitration agreement as a
2  basis for denying coverage before it was even notified of the negotiations, Counterclaimants' fraud
3  claim is based on Clarendon's conduct post-notice, not pre-notice.  Furthermore, in focusing on the
4  facts that Yellow Cab had already authorized its counsel to agree to binding arbitration and that
5  negotiations were already ongoing when Clarendon received notice, Clarendon fails to address the
6  facts that no agreement had yet been finalized and that Counterclaimants had expressly requested
7  Clarendon's input before finalizing the agreement.  For purposes of the present motion, the court
8  must accept these facts as true and view them in the light most favorable to Counterclaimants as the
9  nonmoving party, not selectively and in the light most favorable to Clarendon.

10     Clarendon next argues that Counterclaimants have failed to plead fraud with the
11  particularity required by Rule 9(b).  "In alleging fraud or mistake, a party must state with
12  particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b).  In order to
13  meet the heightened pleading requirements, a plaintiff must specify the time, place, and content of
14  the fraud, as well as the parties involved and their individual participation.  *See Yourish v. Cal.*
15  *Amplifier*, 191 F.3d 983, 993 n.10 (9th Cir. 1999); *see also Parnes v. Gateway 2000*, 122 F.3d 539,
16  549-50 (8th Cir. 1997) (requiring a plaintiff to allege the requisite who, what, where, when, and
17  how of the misrepresentation).  Here, Clarendon fails to analyze in any detail the facts actually
18  pleaded by Counterclaimants and instead asserts only generally that the allegations fail to satisfy
19  the Rule 9 standard.  Whereas such a cursory objection may be sufficient where a claimant's
20  allegations are facially deficient under Rule 9, the court finds that Counterclaimants' allegations are
21  not facially deficient as they are reasonably detailed and touch upon the requisite who, what, when
22  and how of the alleged fraud.  The motion to dismiss shall therefore be denied without prejudice as
23  to the counterclaims for fraud and misrepresentation.

24
25
26

**D.  Unfair Trade Practices**

Counterclaimants finally allege that Clarendon engaged in unfair trade practices in violation of NRS § 686A.310.  That statute enumerates sixteen categories of misconduct by an insurer that are deemed to be unfair trade practices subject to civil liability.  Counterclaimants allege five different types of alleged unfair practices by Clarendon; however, as Clarendon argues in its motion, they fail to specify any of the provisions of the statute on which their claim rests.  In opposition, as with their breach of contract claim, Counterclaimants disclaim any duty to so advise Clarendon or the court.

The court declines to take either course.  On their face, Counterclaimants' substantive allegations appear sufficient to state a claim under at least some provisions of NRS § 686A.310.  Nonetheless, Counterclaimants may not refuse to identify the provisions of the statute upon which their claims are predicated.  The lack of specificity in their allegations and their refusal to so specify inhibits Clarendon's ability to respond to the allegations and the court's ability to assess the viability of the claims.  Accordingly, the court construes Clarendon's motion as a motion for more definite statement under Rule 12(e) and shall grant the motion.

IT IS THEREFORE ORDERED that Plaintiff/Counter-Defendant's Motion to Dismiss Counterclaims (#26) is GRANTED in part and DENIED in part.  Plaintiff shall have 30 days in which to file amended counterclaims.

IT IS SO ORDERED.

DATED this 9th day of March, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE